54 CCPA
**Application of Kurt ORTHS.**
**Patent Appeal No. 7649.**

United States Court of Customs
and Patent Appeals.

Dec. 19, 1966.

Raymond W. Colton, Washington, D. C., for appellant.

J. Schimmel, Washington, D. C. (J. F. Nakamura, Washington, D. C., of counsel), for Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH and ALMOND, Judges.

WORLEY, Chief Judge.

This is an appeal from a decision of the Patent Office Board of Appeals, adhered to on reconsideration, affirming the examiner's rejection of appellant's method claims 1–7, 9 and 12–14 in application serial No. 118,486, filed May 19, 1961, for "Dephosphorization of Ferrous Melts." No claim is allowed and no other claim remains in the application.

Appellant's invention relates to a method for reducing the phosphorus content of molten ferrous metals without substantially reducing the carbon content thereof. The application discloses:

> The invention is based on the findings that a ferrous melt may be effectively dephosphorized with minimal losses of carbon content by treating the melt with continuously fed solid slag forming material while continuously supplying gaseous oxygen and simultaneously withdrawing the excess slag formed. The melt which is contained in a refractory lined container is held at a temperature not more than 200°C. above its solidification temperature, preferably between 50° and 150°C above the latter temperature. The slag forming material includes reactive constituents known to dephosphorize ferrous metal, such as lime and iron oxide, together with fluxing agents.

> The solid slag forming mixture is preferably fed to the same area of the melt to which the oxygen is supplied

and in which the temperature is significantly higher than in the remainder of the melt.

The application further states:

> A layer of slag is established on top of the melt and up to the overflow level by charging slag forming solids which, at the temperature assumed by contact with the melt, fuse to form a liquid phase of relatively low viscosity. The fused layer of slag is basic, capable of reacting with the phosphorus and silicon in the ferrous melt and has oxidizing qualities when supplied with oxygen. The slag forming solids are preferably granular or pulverized but the material may also be compacted into larger units, such as rods, which readily disintegrate at the temperature prevailing in the ladle.

> Feeding of slag forming material then continues while oxygen is simultaneously supplied. Because of the position of the chute between the two nozzles of the forked oxygen lance, the slag forming solids are fed to the hottest spot in the ladle and quickly melt. It is simplest to drop the solid material on the surface of the molten slag layer as closely adjacent the hot spot as possible but more elaborate feeding arrangements may be used in larger installations, or where the conservation of heat is important. *At least a portion of the slag forming solids may be blown onto the surface of the slag layer by pre-mixing with the oxygen supplied so that the oxygen serves simultaneously as a carrier gas for the finely divided slag material. By submerging the nozzles of such an arrangement below the surface of the metallic melt, the slag forming solids and the oxygen are directly introduced in the melt. Slag forming solids may also be injected directly into the melt, preferably at or near the hottest area at which oxygen is supplied, by means other than the propellant action of the oxygen.* (Emphasis added and reference numerals omitted.)

Appellant's single independent claim 1 reads:

> 1. A method of dephosphorizing a melt of ferrous metal substantially without concomitant loss of carbon from said melt, comprising forming a melt of fused phosphorus bearing ferrous metal, forming on said melt a layer of molten slag containing at least one reactive constituent capable of reacting with the phosphorus in said melt, the temperature of said melt being not more than $200°C$, above the solidification temperature of said melt; continuously supplying oxygen to said *melt;* continuously feeding a solid slag forming mixture containing said reactive constituent to said *layer* whereby the amount of slag in said layer is increased; and simultaneously continuously withdrawing slag from said layer. (Emphasis added.)

The other claims all depend from claim 1 with further limitations added. Thus, claim 2 specifies that the oxygen and the slag-forming mixture are fed to the same pre-determined area in the melt. Claim 3 calls for a slag-forming mixture containing at least one inert constituent and the proportions of the reactive and inert constituents are varied during the course of the process. Claim 4 calls for the mixing of the slag-forming mixture with a portion of the withdrawn slag. Claim 5 calls for a constant rate of supplying the oxygen but a varying rate of feeding the slag-forming mixture. Claim 6 is limited to the process without an external heat supply. Claim 7 calls for containing the melt within a layer of basic lining material. Claim 9 specifies that the slag-forming mixture is previously shaped into elongated bodies. Claim 12 is limited to an oxygen supply between 50 and 10 cubic meters per thousand kilograms of melt and between 2–30 kilograms of the slag-forming mixture per cubic meter of supplied oxygen. Claim 13 calls for a basic and oxidizing slag. Claim 14 recites that the rate of withdrawing of the slag is substantially equal to the rate of feeding the slag-forming mixture.

The claims have been rejected by the examiner and the board as being unpatentable over the following references:

Brassert 1,032,653 July 16, 1912.
British Patent 756,429 Sept. 5, 1956.

Before reaching the merits of the rejection, we must dispose of an initial contention made by appellant to the effect that the board did not predicate its decision on a correct copy of the appealed claims. That contention is based on the fact that the board's initial decision contains an incorrect copy of appealed claim 1. In that copy, the relative position of the two emphasized words in the above copy of claim 1 was reversed. After the board's initial decision was rendered, appellant requested reconsideration based, inter alia, on the above indicated error. In a second decision, the board stated that claim 1 was correctly copied in its first decision. Thereafter, appellant filed a further request for reconsideration and filed a notice of appeal to this court. Subsequently, the board found that claim 1 in its initial decision was in fact incorrectly copied but stated that the decision was rendered following a study of the claims presented in appellant's brief which are admittedly correctly copied. Appellant labels the last statement from the board as being a face-saving rationalization and contends that the application had passed beyond the jurisdiction of the Patent Office after the filing of the notice of appeal to this court. Thus, appellant concludes that the Board of Appeals never considered the actual claims on appeal and, therefore, it could not have ruled on the question of their obviousness.

In In re Grier, 342 F.2d 120, 52 CCPA 1081, we held that the board had the power, after the filing of the notice of appeal, to exercise a purely ministerial function in its administrative capacity to correct certain language in its decision. Applying that principle to the present situation, we find that the board properly acted to clarify its original decision by correcting certain obvious errors therein. The appellant's contention that the board never considered a correct copy of the appealed claims is not well-taken in view of the board's statement that its initial decision was rendered following a study of the claims copied in appellant's brief. Moreover, the board's initial decision contains the statement: "Appellant emphasizes in his brief that it is necessary *to add the slag-forming solids to the slag layer* in a continuous stream in order to maintain a stable state at the interface between the melt and the slag. A review of the specification and the original claims fails to substantiate the importance now ascribed to this feature." (Emphasis added.) The emphasized portion in the above quoted statement shows that the board was aware that appellant's claims are directed to the addition of slag-forming solids to the *slag layer* and not to the *melt*. That is consistent only with a consideration of the correct claims.

### Prior Art Rejection

The appealed claims were all rejected as "unpatentable over" the Brassert patent in view of the British patent, or the British patent alone. Brassert discloses a method for manufacturing steel wherein the phosphorus content is reduced by the use of an oxidizing gas, such as air, and an oxidizing agent, such as lime. According to Brassert, a quantity of molten iron is placed in a receptacle lined with acid or basic fire brick, the oxidizing agent is placed on the molten metal and the oxidizing gas is blown into the surface of the metal.

The British patent relates to a process for dephosphorizing a ferrous metal by blowing a mixture of an oxidizing gas and burnt lime into a pig iron bath. The patent states that the oxidizing gas may be blown in through one or more nozzles projecting beneath the surface of the molten metal in a container and that burnt lime is also continuously supplied to the molten metal bath.

In appellant's brief and argument, he emphasized the features of continuously feeding the solid slag-forming mixture to the layer of molten slag and continuously supplying oxygen to the melt to

distinguish over the references. Appellant alleges that those features are critical. However, the British patent clearly shows continuously blowing burnt lime into a pig iron bath along with the oxygen-containing gas. The only difference between the appellant's claimed process and the method disclosed by the British patent resides in the fact that the reference teaches the introduction of the burnt lime into the molten metal bath whereas appellant specifies the addition of the slag-forming material to the molten slag layer. This feature of appellant's invention, however, is clearly shown by the Brassert patent although Brassert apparently teaches the addition of *all* of his oxidizing agents at the beginning of the operation. Furthermore, as the above quoted portions from appellant's application indicate, appellant also contemplates the addition of at least a portion of his slag-forming solids into the melt by premixing the solids with oxygen and introducing the mixture into the melt. In view of such disclosure in the application, the alleged criticality with respect to the introduction of the slag-forming solids to the molten layer of slag is not supported.

Appellant contends in his brief that the feeding of the solid slag-forming mixture to the layer of molten slag is responsible for certain improved results over the prior art shown in Fig. 1 of the application. In said Fig. 1, several curves are presented to compare the results obtained by the use of several prior art processes and that of appellant's method. However, there is no showing that the method of the British patent or that of Brassert was used in obtaining any of the curves. Moreover, appellant's application seems to indicate, and counsel admitted during argument, that none of the curves in Fig. 1 was in fact obtained by the method of either of the references cited by the examiner. Under the circumstances, we find appellant's contention to be without merit.

The dependent claims add various limitations to claim 1 but they were also rejected by the examiner and the board as being taught by the references of record or obvious therefrom. Appellant has not seriously challenged those rejections except in urging that the dependant claims all contain the limitations of claim 1 and so should be similarly patentable. After a thorough review of the record, we find no error in the board's rejection of those claims.

The decision of the board is affirmed.

Affirmed.

SMITH, J., took no part in the decision of this case.

MARTIN, J., participated in the hearing of this case but died before a decision was reached.